**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23 CV 839 |
| | ) | |
| RYAN ZEINALPOOR-MOVAHED, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

For the reasons set forth in the Statement below: (1) the plaintiff's objections to the defendant's bill of costs [36] are overruled; the plaintiff is required to pay costs to the defendant of $1,457.00; and (2) the defendant's motion for attorney's fees [38] is denied.

## STATEMENT

The plaintiff, Jane Doe,[1] alleges that the defendant, Ryan Zeinalpoor-Movahed ("Movahed") sexually assaulted her on December 29, 2020 (or the early hours of December 30. At the time, the parties had been dating for several months. Both resided in Seattle, Washington, but had family in Chicago. They traveled to Chicago together, but spent some time separately visiting their families. They met up on December 28 at the home of Doe's parents, where they stayed the night, and on the 29th, they checked into a suite in an upscale Chicago hotel, which Doe's parents had paid for as a present to the couple. The following narrative of what ensued summarizes information submitted by the parties in support of their claims, with the principal disputes identified.

The record reflects that the Doe and Movahed were getting on well when they checked into the hotel; there is no evidence of any antecedent arguments or discord. After checking into the hotel, the parties shared a bottle of wine and had "consensual intercourse with enthusiastic and ongoing consent." (Doe's words.) Later, they walked to a nearby restaurant and met up with three friends of Movahed. Doe claims to have consumed three, or possibly four, beers, an Old Fashioned, and a shot of whiskey, and to have eaten a bowl of chili, while at the restaurant. Upon leaving the restaurant, Movahed invited his friends back to the hotel suite. Doe says that she was inebriated and began to feel nauseous when the group drove from the restaurant back to the hotel. The parties dispute the degree of Doe's intoxication; Movahed notes that Doe was able to walk from the car to the hotel suite while Doe says that after returning to the hotel, she was so intoxicated that she

---

[1] This case was originally filed in state court, and the state court permitted Doe to proceed anonymously. ECF No. 1-1 at 20. A motion to require Doe to proceed under her real name was pending when Doe's case was dismissed with prejudice. ECF No. 15.

next remembers only sitting in the bathroom vomiting into the toilet and later vomiting into an ice bucket while in bed, and on the sheets. For some portion of this time, Movahed and his friends were out on the hotel balcony drinking.

Doe next recalls being awakened later that night by Movahed. Both were in bed naked and Movahed, who had an erection, was pressed against Doe, asking her to have sex. Doe maintains that she was still intoxicated and confused about what had happened, did not know how she had ended up naked in the bed, and repeatedly told Movahed "no" in response to his entreaties, but "[e]ventually . . . said 'fine' [because] I was worried he would get upset or keep coercing me or get mad. I wanted it to be over." ECF No. 38-5 at 2 (Doe statement). Doe maintains that she was frozen and numb when Movahed entered her and that she did not participate or encourage Movahed in any way. For his part, Movahed maintains that he and Doe had a coherent conversation of approximately fifteen minutes immediately before engaging in consensual sex. Movahed states that when he proposed sex, Doe said her stomach was bothering her but said "OK" to his request and fully participated in the ensuing sexual intercourse.

Both parties also point to subsequent events to corroborate their respective accounts. Doe notes that she told friends about the incident and broke things off with Movahed by January 1, subsequently obtaining a series of domestic violence restraining orders against him—conduct that is consistent with her stated belief that she did not consent. Movahed notes (and Doe acknowledges) that she initiated sex with Movahed the next morning—consistent with his contention that Doe had relented to his request the night before (Doe maintains that she did so only to appease Movahed, who had become angry when she tried to address the issue of his conduct the night before.)

Doe filed this lawsuit in the Circuit Court of Cook County on December 29, 2022, two years after the incident. Movahed removed the case under the diversity jurisdiction (Doe is now domiciled in Washington D.C. while Movahed continues to be domiciled in Washington state and Doe seeks in excess of $75,000 in damages). Less than four months later, Doe moved to dismiss the suit with prejudice and the Court granted that motion. ECF No. 34. Movahed now seeks costs and an award of attorney's fees. Doe objects to both.

Doe's objection to Movahed's bill of costs lacks merit. "[A] voluntary dismissal with prejudice renders the opposing party a 'prevailing party' within the meaning of Rule 54." *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003). And "Rule 54(d) generally creates a presumption in favor of awarding costs to the prevailing party." *Walker v. City of Chicago*, 513 F. App'x 593, 597 (7th Cir. 2013). There are two recognized exceptions to this rule—litigation misconduct by the party seeking costs and indigency of the party against whom they are sought—but neither applies here. As to the first, Doe complains only that Movahed issued subpoenas to friends and colleagues, causing her stress, but there is no suggestion or basis to conclude that the subpoenas were issued for that purpose rather than to obtain relevant evidence. As to the second, Doe does not claim indigence. An award of costs is therefore appropriate and, because Doe makes no challenge to the specific costs set forth in Movahed's bill, his request for costs is granted in full.

Movahed's request for attorneys' fees, however, stands "on a different footing because there is no parallel rule either in Rule 54 or elsewhere creating any presumption of entitlement to such

fees." *Mother & Father*, 338 F.3d at 710. Doe therefore argues first that "attorneys' fees are not awarded when a plaintiff obtains a dismissal with prejudice because the defendant cannot be made to defend again." *Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985). True enough, and perhaps for that reason, Movahed seeks payment of his attorneys' fees not because he is a prevailing party but as a sanction for filing what Movahed characterizes as a "depraved quest for voguish victimhood and a windfall to boot"—in other words, for advancing a baseless calumny against Movahed.

"Rule 11 imposes a duty on attorneys to ensure that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002). One initial obstacle to the imposition of sanctions under Rule 11 is the fact that Doe filed her complaint in state court, not this Court; the case is here only because Movahed removed it. "At the time a state court pleading is signed, the signer is not subject to the Federal Rules of Civil Procedure. . . . Accordingly, a pleading signed in a state court proceeding cannot be signed in violation of Rule 11, and a federal court may not impose Rule 11 sanctions against a signer of a paper filed in state court based solely on that paper's frivolousness." *Griffen v. City of Oklahoma City*, 3 F.3d 336, 339 (10th Cir. 1993). But, "to prevent a party from escaping sanctions for its improper conduct—as defined by state law—while in state court, upon removal of the case, a federal court may impose sanctions under the state-law counterpart to Rule 11 for such conduct. *Id*. at 341.[2]

Illinois Supreme Court Rule 137 is the state court counterpart to Rule 11 and is materially the same. *World Outreach Conference Center v. City of Chicago*, 591 F.3d 531, 538 (7th Cir. 2009).

> Rule 137 authorizes a court to impose sanctions against a party or counsel for filing a motion or pleading that is not well grounded in fact; that is not supported by existing law or lacks a good-faith basis for the modification, reversal, or extension of the law; or that is interposed for any improper purpose. It is settled that the purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions. In other words, the clear purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits.

*McCarthy v. Taylor*, 2019 IL 123622, ¶ 19, 155 N.E.3d 359, 363, *as modified on denial of reh'g* (Oct. 1, 2019) (internal quotes and cites omitted).

Movahed maintains that Doe's claims that she could not, and did not, consent to sex are demonstrably false and therefore are not well grounded in fact. "Lack of consent is an element of battery. . . . It is also an element of a valid Gender Violence Act claim." *Flores v. Santiago*, 2016 IL App (1st) 151850-U, ¶ 13. But "[t]he determination of . . . consent or lack thereof[] is ultimately

---

[2] Movahed's motion also cites 28 U.S.C. § 1927 as authority for awarding sanctions against Doe's counsel but the Court's reasoning applies equally to that statute. The Court does not find that Doe's counsel, who dismissed the case with prejudice less than six months after it was filed, "unreasonably and vexatiously" extended these proceedings.

a matter of credibility and is therefore a question best left to the trier of fact." *People v. Robinson*, 199 Ill. App. 3d 24, 30, 556 N.E.2d 1204, 1208 (1989). "[W]hether or not there was consent for any sexual encounter are factual issues for the jury's determination." *Smith v. Debeers*, No. 03-C-0103, 2006 WL 2253073, at *5 (E.D. Wis. Aug. 4, 2006). And in cases "where it is alleged the victim was too intoxicated to consent, the question for the trier of fact is the reasonableness of the defendant's belief that the victim had consented to sex. . . . Such a determination necessarily hinges on the witnesses' credibility, which the trier of fact determines." *People v. Crompton*, No. 4-02-0676, 2003 WL 23335971, at *9 (Ill. App. Ct. July 22, 2003) (internal citations omitted).

Whether Doe was too intoxicated to consent to sex and, if not, whether she did so, are fact-intensive questions that a jury could answer differently than does Movahed. To be sure, Movahed has strong arguments, but the Court cannot say that Doe's claim could not possibly convince a jury that she did not consent to have sex with Movahed on the night in question and, accordingly, an award of sanctions is not warranted. And where there is evidence that could support a jury's verdict, it cannot be said that the complaint is not well-grounded in fact. *See, e.g., Timatyos v. Austin*, 2011 IL App (1st) 102649-U, ¶ 16 ("In light of the fact that the jury ultimately agreed plaintiff was at least partially responsible for the accident, we simply cannot say defendant's counterclaim for property damage was objectively unreasonable and violated Rule 137."); *Addis v. Exelon Generation Co.*, 378 Ill. App. 3d 781, 796, 880 N.E.2d 685, 699 (2007) ("Evidence was presented from which the jury could have found in plaintiff's favor had the jury not believed defendant's witnesses. Therefore, we disagree with defendant that plaintiff's motion was not well grounded in fact and warranted by law.").

Movahed asserts that it is clear that Doe was not too intoxicated to consent because she was able to walk unassisted from the car to the hotel suite, but there is other evidence that points in the other direction as to her degree of intoxication, such as the amount of alcohol she consumed, her repeated vomiting once she reached the suite, that she passed out and had no memory of how she ended up in bed naked, and was groggy, disoriented and confused when Movahed awakened her. Movahed counters that Doe frequently drinks as much as she did that night, and that he and Doe had a coherent fifteen-minute conversation before engaging in sex, but these assertions highlight that there is a fact issue here, and one that might turn on the parties' respective credibility, as they tell very different stories about what was said and done in response to Movahed's request for sex that night. The evidence does not compel a conclusion that Doe was competent to consent to Movahed's entreaties and there is enough evidence to question Doe's ability to consent to sex after drinking so heavily that she repeatedly vomited and then passed out when she got back to the hotel. The Court cannot conclude that Doe's claim that she was too intoxicated to consent so lacks grounding in fact as to be sanctionable.

Even if it is assumed that Doe was capable of consenting to sex, the evidence does not establish that she did so. Movahed, understandably, emphasizes the fact that Doe ultimately said "fine" in response to his entreaties and her subsequent characterization of his conduct as failing "to read the room" rather than failing to heed her rejection of his advances. That is strong evidence of consent. But Doe's claim is that she said "fine" only because safter saying no multiple times as Movahed pressed against her primed for sex, and thereafter did not participate in the sex in the hope that Movahed would realize that she did not want to do so. Movahed denies Doe's claim of passive resistance, but this is another credibility dispute (one as to which Doe gave generally

consistent accounts of what happened to police and her close friends). Movahed's protests notwithstanding, then, there is a factual basis on which a jury could conclude that although Doe ultimately acquiesced to Movahed's repeated requests, she did so because he would not take no for an answer. "Knowing consent requires [the court] to examine all of the circumstances to see if defendant knowingly exercised such control over complainant that a trier of fact could find that complainant did not submit to the sexual advances of defendant voluntarily, intelligently, and by an active concurrence." *Flores*, 2016 IL App (1st) 151850-U, ¶ 13. The evidence of record permits an inference that Doe did not submit to Movahed's sexual advances "voluntarily, intelligently, and by an active concurrence."

Movahed also contends that it is inconceivable that had he sexually assaulted Doe that she would have initiated sex with him the next morning, sent him affectionate text messages, or co-hosted a New Year's Eve party for friends at Movahed's apartment in Washington. This, too, is strong evidence, but it doesn't show Doe's claim to be frivolous. Movahed's argument rests in part "on the outdated premise that there is a 'correct' way that victims of sexual assaults should act." *People v. Tate*, 2020 IL App (1st) 171442-U, ¶ 49 (that victim took sexually provocative photos a week after alleged assault "does not make it more or less likely that she consented to engage in sexual intercourse with defendant on the night in question."). Doe maintains that she was trying to avoid conflict with Movahed over the next several days because he had reacted angrily when she told him the next morning that she was upset by his actions. It doesn't strain credulity that someone who has been sexually assaulted, particularly under hazy circumstances by someone who is a frequent consensual sexual partner, would not immediately and fully understand or manifest their resentment and anger toward the assaulter. Doe has offered an explanation for why it took her several days to break things off with Movahed and why she appeased him in the meantime. He, by contrast, has not offered a persuasive reason for why Doe—who acknowledges that she and Movahed had an enthusiastic sexual relationship and had just introduced him to her parents—would have abruptly ended the relationship by falsely claiming that Movahed assaulted her.[3]

Movahed's ire is understandable. With the dismissal of Doe's case with prejudice, he has been legally vindicated, but at substantial cost to his reputation and bank account. His able counsel has put together a strong defense that calls Doe's account into question, but that is not a sufficient basis on which to impose sanctions. Determining the point where repeated importuning for sex, even among romantic partners, crosses the line from encouragement to coercion is a significant and complex challenge and the Court cannot say that no jury could see things Doe's way. Sanctions are therefore not warranted.

Enter: May 7, 2024

John J. Tharp, Jr.
United States District Judge

---

[3] Movahed's counsel has vigorously and ably contested Doe's account of the incident, but he pushes the limits of professionalism in equating Doe to a denizen of a "nuthouse." ECF No. 38 at 8. That sort of extreme vitriol and sarcasm is a poor substitute for reasoned analysis.